**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

February 24, 2017

**BY ECF AND HAND DELIVERY**
Honorable Katherine B. Forrest
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:  **United States v. Nokogna Meite**
     **16 Cr. 126 (KBF)**

Dear Judge Forrest,

Nokogna Meite is a hard-working mother of five. At work, she stays overnight, caring for bedridden patients. At home, she cares for her children, all of whom are in school and planning for their futures. Mrs. Meite's life is defined by her roles as a devoted mother, wife, daughter, sister, and friend. At 46 years old, this case marks her first-ever contact with the criminal justice system.

Mrs. Meite made the worst mistake of her life when she filed tax returns to claim money that she was not entitled to. She is ashamed of her choices. Mrs. Meite has already taken concrete steps to right her wrongful behavior: she has already made restitution payments to the IRS and has filed amended tax returns. She will work hard to make financial amends.

A non-incarceratory sentence is appropriate for Mrs. Meite. The potential separation from her children and the loss of her job and her freedom have scared Mrs. Meite significantly. She is a "first offender" who is unlikely to recidivate. A non-incarceratory sentence with supervision will ensure that her behavior and finances are monitored and will allow her to continue making payments toward restitution.

Mrs. Meite pled guilty to Count Two of the indictment, for violating Title 18 United States Code § 287. She will stand before this Court for sentencing on March 10, 2017.

Background

At 12 years old, Mrs. Meite – then Nokogna Fofana – sold fish at the market in her native city of Daloa, in the Ivory Coast. She worked alongside her mother, helping to earn money to support her family. On their way home in the late afternoons, they walked along the dirt roads (which, today, remain unpaved), past the yard that held their goats and chickens, into their two

Honorable Katherine B. Forrest                                February 24, 2017
United States District Judge                                   Page   2
Southern District of New York

bedroom apartment.  There, Mrs. Meite helped her mother and grandmother care for her younger siblings.  Having completed the equivalent of the American fifth or sixth grade, Mrs. Meite's parents took her out of school, unable to afford the tuition.  The work ethic she developed in the fish market and the importance of family instilled in her as a child has stayed with Mrs. Meite through her adulthood.

Mrs. Meite immigrated to the United States in 1992 and became a naturalized citizen in 2008. She and her husband were married in 1995 and they built a family in Manhattan.  Their children, who range in age from 22 to 8 years old, are American citizens by birth.  Mrs. Meite and her husband raised their kids by themselves, primarily in a one-bedroom apartment in upper Manhattan that they have lived in for the last 21 years.  Their home is small and the landlord repeatedly ignores complaints about water leaks, cockroaches, etc.; they do their best to handle repairs without him.

Mrs. Meite and her husband raised their children with good morals and religion; Mrs. Meite and her family are members of a local mosque.  Mrs. Meite has tried to model good behavior for them.  In turn, they relate her good qualities: "My mother has a kind heart and is a very patient person" (see Exhibit C, Letter from Aminata Meite); "She taught me how to love unconditionally and be selfless" (see Exhibit B, Letter from Aicha Meite; "She teaches me how to have self-control, proper manners and how to approach females.  She gives me multiple chances and is always patient and is always forgiving" (see Exhibit D, Letter from A███ Meite).

Their extended families mostly remain half a world away in Africa.  Mrs. Meite's parents stayed in the Ivory Coast until they died.  Before they passed, Mrs. Meite supported them remotely.  She maintained close ties with them and her family and old friends; she visited regularly, sometimes for extended periods of time.  She and her husband own a house there.  In some ways, Mrs. Meite has her feet in two worlds.  Her daughter writes: "She is always giving back to her community back home and trying her best to get involved in the community here." See Exhibit C, letter from Aminata Meite.  Her community in the Ivory Coast reveres her love for her family, her generosity, and her community service.  See Exhibits F - J, Letters from the Ivory Coast.  The Iman who has known her since birth writes: "Nokogna never ceased to be noticed through the various acts she has carried out for our community."  See Exhibit F.  For example, she contributed financially to a cousin while he obtained his electrician training, to a pregnant friend whose husband had lost her job, and to a school that needed materials.  See Exhibits F - J, Letters from the Ivory Coast.  On her visits to Daloa, she helped organize an association to help parents raise their children, visited the local school, and was an active part of the religious community.  Id.

When she first came to the United States, Mrs. Meite worked as a hair stylist.  In 2001, Mrs. Meite completed training to begin a career as a home health aide.  See Exhibit K, Certificates.  Today, she cares for people in 12-hour shifts, usually overnight.  During the night, she changes her patients' bandages and diapers, and rotates them in their beds.  While they are sleeping, she does their laundry and prepares their morning meal.  When they wake, she bathes them, combs their hair, dresses them, and gets them ready for the day.  She gives them breakfast

Honorable Katherine B. Forrest  
United States District Judge  
Southern District of New York  

February 24, 2017  
Page   3

and administers their medications.  She often works an overtime shift in the morning.  Mrs. Meite has worked at multiple agencies in the City.  She is paid on the books and filed taxes annually.  See PSR ¶ 77.

Over the years, Mrs. Meite and her family had a number of failed investments, including rental houses and small businesses they tried to start.  They loaned and borrowed money within their community, as they and their loved ones needed it.  They have never been particularly successful; their defeats outnumbered their successes and they live modestly.

Four of their children currently reside with Mrs. and Mr. Meite: Aicha, Aminata, A██████, and A████ (their oldest child, Massagne, 22, is married and goes to school in Philadelphia).  They are all pursuing their education and are close with one another.  Aicha, 21, attends Lehman College and wants to be a social worker.  She works part-time at Whole Foods.  Aminata, 19, is enrolled in the High School Equivalency (HSE) program at "The Door," a youth services organization.  A██████, 17, is a senior in high school and A████, 8, attends elementary school.

Mrs. Meite's children are supportive of her and petrified at the prospect of being separated from her if she goes to prison.  Both sentiments are conveyed in the children's letters.  Aicha credits her mom with her successes: "I wouldn't be in the position I am today, with the opportunities that I have, without my mother.  She showed me how to be independent, humble and loving through thick and thin . . . ."  See Exhibit B, Letter from Aicha Meite.  Aicha also worries that her limited wages from working at Whole Foods could not support her and her siblings if her parents were both sent away.  She writes: "I am not getting enough hours at work to support the family.  It's been hard to handle all the pressure."  Id.  She also writes of the emotional loss: "Just imagine the difficulties, the hardship, and the depression that I will go through if my mother is not here.  Please ease my difficulty by not taking her away."  Her younger sister writes: "I love my mother so much and would do anything for her," and "I want to tell you that all of my family is having a hard time."  See Exhibit C, Letter from Aminata Meite.

A██████, 17, writes: "Ever since I was a little boy, my mom always taught me bad from good, and left from right."  See Exhibit D, Letter from A██████ Meite.  "She always taught me to never take anything for granted and this is why I appreciate and need her in my life."  Id.  In considering her potential incarceration, he says: "Without her, I don't know where I would go.  Every day I wake up praying that I don't lose her.  I want her to see my accomplishments, my growth, and I would want to at least attempt to give her back everything that she has done for me."  Id.  A████, 8, ██████████████████████████████████

See Exhibit E.

There are no other family members who could step into Mrs. and Mr. Meite's roles with their children if they were both incarcerated.  The Department of Probation has recommended that if the Court sentences them each to terms of incarceration, that the Court do so in a

Honorable Katherine B. Forrest  February 24, 2017
United States District Judge  Page   4
Southern District of New York

staggered fashion: one parent will remain home with the children while the other is in jail and vice versa.  See PSR Recommendation.

Offense Conduct

As indicated in the PSR, the investigation that led to Mrs. Meite's arrest began with a "tax preparer in New York City who submitted false fuel tax credits in order to obtain refunds for multiple businesses."  See PSR ¶ 13.

Mrs. Meite has no expertise in tax credits; she has no formal education past the approximate equivalent of fifth or sixth grade; her ability to read English is limited.  She did not devise this scheme.  Rather, she and her husband and others they knew succumbed to the promise of extra money.



Mrs. Meite knew that she was receiving money that she was not entitled to.  Mrs. Meite knew then and knows now that what she did was wrong.  Mrs. Meite regrets her actions: "Ive always worked for my money.  I know better than to take money I didn't earn.  If I could go back in time, I would never do this."  Id.

Commitment to Paying Restitution

Mrs. Meite brought her first restitution payment to court on the date of her guilty plea and she has made regular payments since then: $1000 (dated 10/24/16), $500 (11/28/16), $500

---

1

Honorable Katherine B. Forrest   February 24, 2017
United States District Judge   Page   5
Southern District of New York

(12/27/16), and $500 (1/26/17).  She will have paid $2500 before her sentencing (in February, Mrs. Meite used her allocated $500 to pay the first installment to the tax preparer who filed her amended returns).  There is no better way for a defendant to demonstrate to the Court his or her commitment to paying restitution.

Mrs. Meite is committed making restitution until her debt is paid in full.[2]  At her current job and will be able to make payments on a regular basis, as she has done for the past few months.  "If you give me a chance to stay out of jail, I will work as hard as I can to pay back the money."  See Exhibit A, Letter from Mrs. Meite.  Mrs. and Mr. Meite have also agreed to turn over the proceeds from the sale of their property in the Ivory Coast, which has an estimated value of $50,000.  They intend to sell the property when one of them can next travel there (with the Court's permission, while on supervision) and arrange it.

Mrs. Meite filed amended federal tax returns for the corporation for the years 2008, 2009, and 2010, as required by the plea agreement.  She knows she is responsible for any additional monetary penalties that the IRS levies.  Additionally, although it was not explicitly mandated by the plea agreement, Mrs. Meite filed corporate returns with New York State and New York City for the years in question as well.  Mrs. Meite will also pay any additional fees mandated by any of these three governmental bodies once they process the returns.  In short, Mrs. Meite will be paying the government back for the actions that underlay this case for much of her future.

The Appropriate Sentence

The Court should impose a non-incarceratory sentence in this case, with any combination of home confinement and probation or supervised release.  The parties stipulated, via plea agreement, to the applicable guidelines range (18 - 24 months).  The Department of Probation recommended a below-guidelines sentence of one year and one day.  We submit that no jail time whatsoever is required to meet the statutory goals of sentencing.  Home confinement and probation would punish Mrs. Meite, severely restrict her liberty, and deter future misconduct while enabling her to continue making restitution by working, and caring for her four dependent children.

In selecting a sentence, this Court takes as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)."  United States v. Douglas, 713 F.3d 694, 700 (2d Cir. 2013). That provision directs sentencing courts to "'impose a sentence sufficient, but not greater than necessary, to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)," i.e., "proportionality, deterrence, incapacitation, and rehabilitation."  Id.; see also, e.g., United States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006).  "[D]istrict courts may impose sentences within statutory limits based on appropriate consideration of all the factors listed in § 3553(a)."  Pepper v. United States, 562 U.S. 476, 490 (2011).  To be sure, the guidelines range is one such factor, but it is only one, and "the Sentencing Guidelines are just that, guidelines, and . . . 'they truly are advisory.'"  Douglas,

---

[2] Mrs. and Mr. Meite did not keep the full amount of the money paid to them by the IRS; approximately half was returned to the tax preparer.  Still, they are committed to making the IRS whole by paying back the full amount.

Honorable Katherine B. Forrest                                              February 24, 2017
United States District Judge                                                         Page   6
Southern District of New York

713 F.3d at 700 (quoting <u>United States v. Cavera</u>, 550 F.3d 180, 189 (2d Cir. 2008) (en banc)).

      Mrs. Meite has accepted full responsibility for her misconduct and she has expressed remorse: "I should never have filed taxes asking for money that didnt belong to me.  It was the biggest mistake of my life." <u>See</u> <u>Exhibit A</u>, Letter from Mrs. Meite.  She recognizes that she abused her relationship with her adopted country: "America changed my life from bad to good.  I never wanted to take advantage of my new country.  Im so sorry." <u>Id.</u>

      This case – from the moment of her arrest, through today – has already impacted Mrs. Meite.  "This experience has turned my life upside down.  Ive suffered every day worrying about what will happen.  I have learned my lesson.  I regret this from the bottom of my heart." <u>Id.</u> Mrs. Meite, the Court may recall, cried through her plea allocution.  During her pre-sentence interview, when asked about the impact of this case on herself and her children, Mrs. Meite was crying so hard that we stopped the interview temporarily.  She lives every single day with the consequences of her actions: she knows that she brought this on herself and her family.  "I know I hurt my children by getting involved in this case." <u>Id.</u>  Even before any sentence is imposed, Mrs. Meite has been punishing herself for her misconduct.  She has been specifically deterred from doing anything like this in the future.

      The United States Sentencing Commission ("the Commission") is considering a new approach for first-time offenders.  In the recently-proposed amendments to the Guidelines,[3] the Commission relied on its "multi-year study of recidivism" and data which "indicate[d] that 'first offenders' generally pose the lowest risk of recidivism." <u>See</u> Amendments, p. 1.  It also emphasized the directive in Title 28 United States Code § 994(j) that "alternatives to incarceration are generally appropriate for first offenders not convicted of a violent or otherwise serious offense." <u>Id.</u>

      The Commission considered that the first column of the guidelines chart does too little to distinguish first-time offenders from others whose criminal history points are uncounted or aggregate to one. <u>Id.</u>  Instead, it proposes a new separate guideline for "First Offenders" (that would be known as section § 4C1.1).[4] <u>Id.</u>  Aside from the specific proposals regarding first-time offenders, the overarching theme of this section is that "first offenders" should be treated differently than others.  Mrs. Meite falls squarely into that category.

---

[3] The proposed amendments ("Amendments") can be found at:
http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20161219_rf_proposed.pdf.

[4] The proposal for § 4C1.1 contains two options for calculating the offense level; option 1, applied here, would result in a guidelines range of 15-21 months, and option two would result in a range of 12-18 months.  The latter would fall within the proposed 'expanded' Zone B.  Proposed § 5C1.1(g), then, would direct that when a person is a first offender, the offense of conviction is not a crime of violence or did not use violence or threats of violence or a weapon (these are listed as alternatives in the proposal), and the range is in Zone A or B, a "the court ordinarily should impose a sentence other than a sentence of imprisonment . . . ." <u>Id.</u>

Honorable Katherine B. Forrest  February 24, 2017
United States District Judge  Page   7
Southern District of New York

      While still proposals, the Guidelines are meant to represent the Commission's reasoned views regarding sentencing – and those views are expected to change over time.  Congress and the Supreme Court intended for the Guidelines to evolve.  See U.S.S.G. § 1.A.2, intro. comment (relying on Rita v. United States, 551 U.S. 338, 350 (2007) ("The Commission's work is ongoing.  The statutes and Guidelines themselves foresee continuous evolution helped by the sentencing courts and courts of appeal in that process. . . The Commission will collect and examine the results . . . And it can revise the Guidelines according").

      While the proposed amendments have not yet been acted on by Congress, they represent the Commission's most current views of the appropriate sentencing scheme.  Here, they have put forth views that specifically target a new class of defendants: "first offenders."  Such updated policy views are to be contemplated at sentencing.  See 18 U.S.C. § 3553(a)(5)(A).

Conclusion

      Mrs. Meite's status as a first offender, coupled with the irreplaceable role she plays in the life of her family, community, and her lifelong work-ethic, weigh in favor of a non-incarceratory sentence.  So, too, does her remorse for behavior and her demonstrated commitment to working hard to make the IRS whole.

      The Court can have confidence that Mrs. Meite will be a successful supervisee because she has demonstrated her ability to comply with court supervision.  Mrs. Meite has been compliant with her pretrial release for almost 11 months.  See PSR ¶ 8.  The Court can also have confidence that Mrs. Meite will make restitution because she has already made a series of payments.  Mrs. Meite's past performance is indicative of her potential for the future.

      For all of these reasons, any combination of home confinement and probation or supervised release is "sufficient but not greater than necessary" to satisfy the statutory goals of sentencing. 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/
Sylvie Levine
Attorney for Nokogna Meite
212-417-8729